UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

UNITED STATES OF AMERICA, )
    Plaintiff/Respondent, )
                           )
v. )     Case No: 4:20-cr-339
                           )                4:23-cv-01016
JUAN MANUEL CONTRERAS- ) Hon. Terry R. Means
ZAMORA, )
    Defendant/Movant. )
                           )

## MEMORANDUM IN SUPPORT OF MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE PURSUANT TO 28 U.S.C §2255

\* \* \* \* \* \* \* \*

NOW COMES the Defendant/Movant, Juan Manuel Contreras-Zamora ("Zamora")[1], *pro se,* and after being granted leave, respectfully offers the following timely Memorandum in Support of his previously filed Motion to Vacate Set Aside or Correct Sentence. Zamora's 28 U.S.C. §2255 Motion ("§2255 Motion") was filed pursuant to the statutory authority found in 28 U.S.C. §2255 ("§2255").

### I.    INTRODUCTION

Zamora, by way of his §2255 Motion, asserts that his conviction and sentence are vulnerable to collateral attack because errors of a Constitutional magnitude

---

[1] Because Zamora is proceeding in this matter without the benefit of counsel, it is respectfully requested that a liberal interpretation be applied to the allegations and arguments asserted herein. See: *Hernandez v. Thaler,* 630 F. 3d, 420, 426 (5th Cir. 2011) ("*the filings of a federal habeas petitioner who is proceeding pro se are entitled to the benefit of liberal construction*"); See also: *Ahmed v. Rosenblatt,* 118 F. 3d 886, 890 (1st Cir. 1997) (explaining that "*our judicial system zealously guards the attempts of pro se litigants on their own behalf.*").

substantially affected the outcome of critical phases of his criminal proceeding. Specifically, Zamora avers that he was denied the type of advocacy the Supreme Court has consistently held that the Sixth Amendment to the United States Constitution guarantees all criminal defendants receive during critical phases of his criminal proceeding.  As a consequence of these Constitutional errors, which are complained of in Zamora's §2255 Motion and fully articulated herein, it is respectfully submitted that, the most Constitutionally prudent course, is to set aside the previously imposed judgment and hold further proceedings – whereby Zamora can be aided by the effective advocacy of counsel.

## II.    BACKGROUND & PROCEDURAL POSTURE

On December 16, 2020[2], a Grand Jury situated in this judicial district returned a sprawling Superseading Indictment against Zamora and 28 other's alleging various violations of federal law.  See: *DE 360.*  Zamora was identified in the Superseading Indictment as defendant 25 and was named in just three of the twelve counts. See: *Id.*    Specifically, the Grand Jury alleged that Zamora:   conspired to distribute methamphetamine in violation of 21 U.S.C. §§841(a)(1), (b)(1)(a) and 846 (Count Five); attempt to possess with the intent to distribute methamphetamine in violation of 21 U.S.C. §846 (Count Eleven); and, possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. §924(c) (Count Twelve). See: *Id.*[3].  On March 4, 2021,

---

[2]  In the interests of judicial economy only the facts relevant to the Constitutional claims of error asserted in Zamora's §2255 Motion are discussed herein.

[3] The Indictment also contained a forfeiture allegation.  See: *Id.*

Zamora would be represented during all relevant proceedings in front of this Court, by Attorney Sean D. Colston ("Colston").  See: *Zamora Declaration Exhibit "A".* Shortly after his appointment, and at the urging of Zamora, Colston filed a motion seeking to suppress evidence and statements obtained by law enforcement on the basis of probable cause and Zamora invoking his post-arrest right to counsel.  See: *DE 413, 412.* The Court, after briefing, but without a hearing - denied both motions. See: *DE 490, 515.* In denying the motion to suppress statements, the Court took Colston to task explaining that:

> "Defendant has wholly failed to demonstrate that the affiant, TFO Collins, was present at the traffic stop or otherwise knew that Defendant did not consent to the search.  Indeed, Defendant failed to even submit the search-warrant with his motion.  Consequently, the Court also cannot determine whether the affidavit would lack probable cause if the allegedly false statement regarding Defendant's consent to the search were excised." See: *Id.*

Shortly after the denial of the suppression motions, Colston presented what he described as an "open plea" and explained that the United States wanted Zamora to plead guilty to the conspiracy count, as identified in Count Five of the Indictment. See: *Id.* Zamora, rightly or wrongly, expressed concern about the presented plea because it did not contain a case number; instead of trying to clam those fears – Colston simply offered "that's the way the Fed's do things".  See: *Id.* At this point, Colston explained that he believed that Zamora had a "good chance of winning" at trial and that if convicted the "most time" he would receive was "ten to fifteen years". See: *Id.* This was much the same representation Colston made to Sarahi Zamora, Zamora's wife, when he told her that if convicted Zamora would receive a sentence of

"around ten years". See: *Sarahi Zamora Declaration Exhibit "B"*. With Colston's advisement as to sentence exposure and in consultation with his wife, Zamora made the decision to go to trial. See: *Id.* At no point did Colston explain the elements the United States was required to prove at trial; the effect the Court's denial of the suppression motions would have on defense strategy; or, true sentencing exposure if convicted at trial. See: *Id.* Likewise, at no point did Colston explain to Zamora that he could plead guilty without the benefit of a written plea agreement and that doing so would alleviate any concerns he might have had about the written plea agreement not containing a case number. See: *Zamora Declaration Exhibit "A"*.

On March 17, 2021, a Jury convicted Zamora on all counts. See: *DE 522*. Thereafter, the Court sat the matter for sentencing and ordered the office of Probation and Parole to prepare a pre-sentence report. See: *DE 553*. At sentencing, which was held on August 10, 2021, the Court adopted the pre-sentence report without alteration and in doing so determined, as it related to the drug related counts, that Zamora's guideline range was 324-405 months, which was well above the "ten to fifteen years" Colston represented that his sentence would be. Zamora's guideline calculation was driven, in large part, by the statements he made to law enforcement regarding the drugs attributable to the conspiracy – that is between 20 – 30 kilograms. See: *DE 1134 at 6*. After hearing arguments, the Court imposed a 324 months custodial sentence as to Count's Five and Eleven followed by a consecutive 60-month custodial sentence at to Count Twelve. See: *DE 1052*. Following the imposition of judgment, Zamora filed a timely notice of appeal. See: *DE 1054*. After

briefing, the Court of Appeals affirmed Zamora's conviction and sentence by unpublished opinion. See: *United States v. Contreras-Zamora*, No. 21-10813 (5th Cir. May 10, 2022) Thereafter, Zamora filed a timely petition to the Supreme Court for Certiorari. On October 3, 2022, the Supreme Court declined to grant Certiorari review. See: *Contreras-Zamora v. United States*, 21-8172 (2022).

Zamora timely §2255 Motion and this Memorandum in Support thereof follows the decision of the Supreme Court.

## III.    LEGAL ARGUMENT

### A.    Habeas Corpus and §2255 Standard

The Supreme Court has long recognized there to be "no higher duty of court under our Constitutional system than the careful processing and adjudication of petitions for writs of habeas corpus, for it is through such proceedings that a person in custody charges that error, neglect, or evil purpose has resulted in his unlawful confinement and that he is deprived of his freedom contrary to law." See: *Harris v. Nelson*, 394 U.S. 286, 292 (1965). When Congress enacted the §2255 statute, they intended it to be a statutory substitute to permit federal prisoners to petition their sentencing court for relief based upon an error so serve that it served to render their conviction and/or sentence vulnerable to attack[4]. See: *Hill v. United States*, 368 U.S. 424, 427 (1962) ("It conclusively appears from the historic context in which §2255 was enacted that the legislation was intended simply to provide the sentencing Court a remedy exactly commensurate with which had previously been available by Habeas*

---

[4] As Zamora's sentencing court, this Court has jurisdiction to hear and consider his filing pursuant to 28 U.S.C. §1331.

*Corpus in the Court of the district wherein the prisoner is confined")*. Because our judicial system favors a strong interest in finality, only three types of claims are properly before the court in a §2255 proceeding; they are a conviction or sentence that was:

> (1) imposed in violation of the Constitution or federal laws; (2) imposed by a court without jurisdiction to do so; and (3) was in excess of the maximum permitted by the law. See e.g.: *United States v. Placente, 81 F. 3d 555, 558 (5th Cir. 1996) (citing and discussing 28 U.S.C. §2255).*

Because Zamora's §2255 Motion alleges errors of Constitutional magnitude, he must prove beyond a preponderance of the evidence[5] that the errors are so severe "that it had a substantial injurious effect on the outcome of the proceeding." See: *Brecht v. Abrahamson,* 507 U.S. 619, 637 (1993). As further evidence of the strong interest in finality our system favors, the above scope of claims is only actionable if a defendant could not have raised them on direct appeal[6]. See: *Massaro v. United States, 538 U.S. 500, 504 (2003);* See also: *United States v. Scott,* No. 17-23 at *2 (E.D. La. March 3, 2020) ( citing United States v. Williamson, 183 F. 3d 458, 462 (5th Cir. 1999) ("Section 2255 is designed to remedy constitutional errors and other injuries a defendant could not have raised on direct appeal that would result in a miscarriage of justice if left unaddressed")[7].*

---

[5] See: *United States v. Bondurant, 689 F. 2d 1246, 1251 (5th Cir. 1982) (explaining the applicability of the preponderance of the evidence standard within a §2255 filing).*

[6] For a post-conviction claim to be properly before the Court, which was not raised on direct appeal, the Defendant bears the burden in showing both "cause and actual prejudice". See: *Reed v. Farley, 512 U.S. 339, 353-54 (1994)*

[7] Put differently, §2255 relief "is reserved for transgressions of a Constitutional right and for a narrow range of injuries that could not have been raised on direct appeal and, if condoned, result in a complete miscarriage of justice." See: *Moore v. United States, 598 F. 2d 439, 441 (5th Cir. 1979)).*

Having an actionable claim is only half the battle in asserting a §2255 motion. As again, the interest of finality dictates that, absent a few exceptions, the motion must be filed within one year of a defendant's criminal case becoming final. See e.g.: *United States v. Olvera*, 775 F. 3d 726, 728 (5th Cir. 2015) (discussing 28 U.S.C. *§2255(f) being none jurisdictional and thus subject to equitable tolling in limited circumstances)*[8]. For this purpose, the Supreme Court has said that a conviction becomes final when "the availability of appeal has been exhausted, and the time for a petition for certiorari has elapsed or a petition for certiorari has been denied." See: *Griffith v. Kentucky*, 479 U.S. 314, 321 n.6 (1987). In Zamora's case, the Supreme Court denied his Certiorari Petition on October 3, 2022. Therefore, in accordance with 28 U.S.C. §2255(f)(1), Zamora's §2255 Motion was timely filed – as it was forwarded to the Court on September 30, 2023 and officially docketed on October 3, 2023 – which is within the one-year statutory deadline[9].

### B. Zamora was Denied his Constitutional Right to the Effective Assistance of Counsel

#### 1. Ineffective Assistance of Counsel Standard

---

[8] 28 U.S.C. §2255(f) provides that:

"A 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of-(1) the date on which the judgment of conviction becomes final;(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence." See: *28 U.S.C. §2255(f)*.

[9] This does not take into account the three-days afforded non-ECF filers. See e.g.: *J&J Sports Products, Inc. v. Q Café, Inc.*, No. 3:10-cv-2006 at *2 (N.D. Tex. June 12, 2013) (discussing the three-day mailing rule for non-ECF filers).

It has been explained that the Sixth Amendments[10], great purpose is to protect a criminal defendant's fundamental right to a fair trial. See: *Powell v. Alabama*, *287 U.S. 45, 52 (1932)*. Paramount to this fundamental right is the right of a criminal defendant to the "effective assistance of counsel" (See: *McMann v. Richardson*, *397 U.S. 759, 771 n.14 (1970)*) not just at trial but also during all other "critical stages" of the proceeding. See e.g.: *Coleman v. Alabama*, *399 U.S. 1, 9-10 (1970)*. In explaining why this Constitutional protection attaches to other proceedings, the Supreme Court offered:

> "In addition to counsel's presence at trial, the accused is guaranteed that he need not standalone against the state at any stage of the prosecution, formal or informal, in court or out, where Counsel's absence might derogate from the accused's right to a fair trial." See: *United States v. Wall*, *388 U.S. 218, 226 (1967)*.

To assist Courts in determining whether a criminal defendant was afforded their Sixth Amendment right to effective representation, the Supreme Court, by way of its decision in *Strickland v. Washington*, *466 U.S. 688 (1984)*, established a two-prong test which remains the "touch-stone" for advancing claims of ineffective assistance of counsel. See: *Blakenship v. Hall*, *542 F. 3d 1253, 1272 (11th Cir. 2008)*. The often-called *Strickland* test requires a showing that:

> "(1) counsel's performance was deficient, meaning that it fell below an objective standard of reasonableness, and (2) the deficient performance prejudiced the defense, meaning that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

---

[10] The Sixth Amendment to the Constitution provides that:
"In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him to have compulsory process for obtaining witnesses in his favor, and to have the assistance of counsel for his defense." See: *U.S. Cons. Amd. VI.*

would have been different." See: *United States v. Pickett*, *941 F. 3d 268, 273 (6th Cir. 2019) (quoting, in part: Strickland, at 687)* {brackets added}.

It is not enough to satisfy one prong of the test, as the requirement is that both prongs of the *Strickland* test must be satisfied before an entitlement to relief can be established. See: *Smith v. Robbins, 528 U.S. 259, 289 (2000)*. In short, the *Strickland* test requires a showing that the outcome of the proceeding would have been different, in some measurable way, with a different attorney. See: *Bell v. Cone, 535 U.S. 685, 695 (2002)*.

It is of importance to note that simply because Zamora did not raise the claims of ineffective assistance of counsel asserted in his §2255 Motion on appeal he is not now prohibited from doing so. This is so because claims of ineffective assistance of counsel fall within the narrow exemption of actionable post-conviction claims that are not forfeited/waived – if not raised on direct appeal. See: *Massaro at 504.* As explained by the Appellate Court, these claims are best brought in a post-conviction filing to ensure that a "record on the merits of the allegations" is properly developed. See: *United States v. Cantwell, 470 F. 3d 1087, 1091 (5th Cir. 2006)*.

### 2. Zamora Was Denied The Effective Assistance of Counsel During The Pre-Trial Phase

The right to the "effective assistance counsel extends to the pre-trial phase". See: *United States v. Pickett, 941 F. 3d 268, 273 (6th Cir. 2019)*; See also: *Burdine v. Johnson, 262 F. 3d 336, 344 (5th Cir. 2001)*. This includes counsel "advising the defendant whether he should plead guilty" and ensuring that they "fully understand{} the risks of proceeding to trial". See: *United States v. Herrera, 412 F. 3d 577, 580*

*(5th Cir. 2005) (citing <u>Reed v. United States</u>, 354 F. 3d 227, 229 (5th Cir. 1965).* As part of this obligation counsel must ensure that their client has an "understanding of the law in relation to the facts" of the case (See: <u>*United States v. Cavitt*</u>, *550 F. 3d 430, 440 (5th Cir. 2008))* and is fully aware of the sentencing exposure they face following trial. See: <u>*Sosa v. United States*</u>, *No. 1:20-4 at \*2 (S.D. Tex. Sep. 9, 2021) (citing <u>Herrera</u> and explaining that "apprising a defendant about his exposure under the sentencing guidelines is necessarily part of this process.").* If counsel fails to meet these basic yet critical requirements, their representation has ran afoul of the Sixth Amendment and the defendant is entitled to relief. See: <u>*Childress v. Johnson*</u>, *103 F. 3d 1221, 1227 (5th Cir. 1997) ("a defendant is entitled to the effective assistance of counsel in determining how to plead...and can attack his conviction collaterally if he is not given this right.").* With this standard in mind, Zamora would submit that Colston failed to satisfy his Constitutional obligations during the pre-trial phase when he failed to: A) explain the elements the United States was required to prove to obtain a guilty plea at trial; B) correctly explain the consequences of going to trial; C) explain the availability of pleading guilty without the benefit of a plea agreement; and, D) failed to explain what effect the denial of the suppression motions would have at trial and sentencing. Each of these failures are discussed in turn.

**a.     Failure to Explain The Elements of The Charged Offenses and The Effects of the Suppression Motion Had on Trial Strategy**

While the ultimate decision to go to trial rests with the defendant, to pass Constitutional muster, that decision must be made knowingly. See e.g.: *Beckham v Wainwright*, *639 F. 2d 262, 266 (5ᵗʰ Cir. 1981)*.  In *Smith*, the Sixth Circuit explained that the decision is only made knowingly when the following expectations are met:

> "A criminal defendant has a right to expect at least that his attorney will review the charges with him by explaining the elements necessary for the government to secure a conviction, discuss the evidence as it bears on these elements, and explain the sentencing exposure the defendant will face as a consequence of each of these options available."
> See: *Smith v. United States 348 F. 3d 545, 553 (6th Cir. 2003)*[11].

Colston actions fell well short of these expectations. At no point did Colston explain to Zamora that the United States was not required to prove he physically participated in the distribution of the narcotics charged in the Indictment – but could rather connect him to the distribution through witness testimony. Because of this failure Zamora made the decision to go to trial on the mistaken belief that because he was never caught by law enforcement with narcotics or because there was never any physical/direct evidence of him possessing narcotics – that the United States would be unable to prove to the Jury that he possessed or distributed narcotics.  See: *Zamora Declaration Exhibit "A"*.  Zamora presumed, but admittedly does not know for certain, that this lack of direct evidence is the reason Colston told him he had a "good chance" of winning at trial. See: *Id.*  Secondly, at no point did Colston tell

---

[11] While this exact language has not been adopted by this Circuit, the language goes hand in hand with the Circuit's opinion in *Beckham*.

Zamora that because of the conspiracy count, should he be found guilty at trial, the total weight of the drugs distributed by the conspiracy could be attributed to him at sentencing – thereby greatly increasing his sentencing exposure[12]. See: *Id.* Because of these failures Zamora, much like the defendant in *Smith*, unknowingly made the decision to go to trial.

To perhaps make matters worse, Colston also failed to explain what evidence the United States could use against Zamora at trial. More specifically, Colston failed to explain that because of the Court's order denying the suppression motions, the incriminating statements that Zamora made to law enforcement and the evidence obtained following the vehicle stop – could be used against at trial and sentencing. Put simply, with this evidence the United States' burden of proof was all but satisfied without any other witness testimony.

### b.    Failure to Explain the Consequences of Going to Trial and The Availability of Pleading Guilty Straight Up

The Appellate Court has long stated that "one of the most important duties of any attorney representing a criminal defendant is advising the defendant about whether he should plead guilty" (See: *Reed v. United States, 354 F. 3d 227, 229 (5th Cir. 1965)*) and that an attorney's failure to provide their client the "effective assistance of counsel in determining how to plead" can be collaterally attacked in a post-conviction motion.  See: *Childress v. Johnson, 103 F. 3d 1221, 1227 (5th Cir.*

---

[12] See: *United States v. Medina, 161 F. 3d 867, 876 (5th Cir. 1998)* ("When the defendant has participated in a drug conspiracy the quantity of drugs attributable to him includes both the drugs with which the defendant was directly involved and the drugs that can be attributed to him through the conspiracy.") (internal citations omitted).

*1997)*. Colston, presented with a defendant charged in a wide-ranging criminal conspiracy who all but admitted to law enforcement his involvement, told his client that he believed he had a "good chance" at trial. See: *Zamora Declaration Exhibit "A"*. Put simply, Colston's advertisement is the epitome of the ineffective assistance of counsel.

Zamora does admit that the United States extended a plea offer and that he rejected said offer[13]. The issue is that the rejection was based upon Colston's failure to fully explain the terms of the agreement as well as the pros and cons of entering into the agreement vs. going to trial. Indeed, all that Colston really offered was that not including a case number on a plea agreement was the way "Fed's do things". See: *Id*. Rather than tell Zamora, if convicted at trial, he would face a sentence of at least twenty years based upon his own drug-weight admissions, Colston flatly said to both Zamora and his wife that if convicted his sentencing exposure would be somewhere between ten and fifteen years; but that he had a "good chance" at trial. See: *Zamora Declaration Exhibit "A"*; See also: *Sarahi Zamora Declaration Exhibit "B"*.

Assuming, for the sake of argument, that Colston had explained the full terms of the extended plea agreement and Zamora made the informed decision to reject it. The fact remains that Colston had a Constitutional duty to explain the availability of pleading guilty "straight up". Doing so would have allowed Zamora to avoid trial and receive a more favorable sentence because of an acceptance of responsibility

---

[13] To be clear, Zamora is not asserting that he had a Constitutional right to receive a plea offer that he would have found acceptable. See: *Weatherford v. Bursey, 429 U.S. 545, 561-61 (1970)(explaining that the Constitution does not guarantee a favorable plea offer)*.

reduction[14]. As explained by Judge Steele, of the Middle District of Florida, "while pleading guilty straight up carries some inherent risks which counsels must discuss with his client...it is nonetheless an available option which must be discussed with a defendant". See: _West v. United States_, No. 2:11-cv-39-FTM at * 6 (M.D. Fla. April 29, 2013).

### c.   Colston's Plea Phase Failures Satsify Both Prongs of the _Strickland_ Test

Applying controlling circuit and Supreme Court authority, each of Colston's above articulated failures easily satisfy _Strickland's_ deficient performance prong because they alone or combined led to Zamora making a wholly uninformed decision to go to trial. Turning to the prejudice prong, undoubtably the United States will aver that Zamora cannot satisfy the prong because he has always maintained his innocence in distributing drugs. In response to this likely argument, Zamora would submit that if he was aware that he would likely receive a less severe sentence by pleading guilty and that his true sentencing exposure was nearly double that which Colston told him it was – he would have pleaded guilty, even if he personally believed he was innocent. See: _Zamora Declaration Exhibit "A"_; See also: _Young v. Spinner_, _873 F. 3d 282, 287-88 (5th Cir. 2017) (discussing the incentives of pleading guilty)_; See also: _United States v. Tursi_, _546 F. 3d 451, 456 (6th Cir. 2009) ("avoiding the risk of a longer sentence after trial, obtaining a more favorable sentence through a plea agreement, or bringing a quick resolution to the case.")_.

---

[14] See: _United States v. Hegwood_, _934 F. 3d 414, 415 (5th Cir. 2019) (explaining that when a defendant pleads guilty it is typical for probation to recommend "a two-level reduction for acceptance of responsibility and a one level reduction for timely notification of his intent to plead guilty")_.

A simple review of the sentencing guidelines confirms that Zamora's sentencing exposure would have been less if he pleaded guilty. To that end, applying the same guidelines deemed by the Court to be applicable at sentencing but awarding, at least a two-level, acceptance of responsibility reduction[15], Zamora's advisory guideline range, on the drug related offenses becomes 262-327 months. See: *https://www.ussc.gov/ guidelines, 36 Cat. IV[16]*. Additionally, while admittedly speculative, it is entirely likely that had Zamora pleaded guilty he would have received a less severe sentence – over and above the aforementioned acceptance of responsibility reduction. This is the case because, it is well settled that defendants who are convicted at trial "consistently receive harsher punishments than defendants who plead guilty." See: *Brian D. Johnson, Trials, and Tribulations; The Trial Tax and The Process of Punishment, 48 Crim & Just 313, 314 (2019)*. This often called "trial tax" results in "15-60 percent longer sentence lengths." See: *Id*. Because of Colston's failures, Zamora was subjected to this trial tax.

---

[15] U.S.S.G. §3E1.1 provides that:

   "(a) If the defendant clearly demonstrates acceptance of responsibility for his offense, decrease the offense level by 2 levels. (b) If the defendant qualifies for a decrease under subsection (a), the offense level determined prior to the operation of subsection (a) is level 16 or greater, and the defendant has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently, decrease the offense level by 1 additional level." See: *U.S.S.G. §3E1.1 (2022)*.

[16] At the end of the day, even if Zamora's custodial sentence is just one day longer because of Colston's pre-trial/plea phase failures a Constitutional error occurred; because "any additional time in prison has Constitutional significance." See: *United States v. Grammas, 376 F. 3d 433, 435 (5th Cir. 2005)*.

Because of Colston's failures Zamora made the decision to go to trial without fully understanding the consequences of doing so.  The unfortunate result of this uninformed decision is that Zamora will spend far longer in prison than he otherwise would have.  It is therefore respectfully submitted that the interests of justice so demand that Zamora's conviction and sentence be set aside and further proceedings held – whereby Zamora can be aided by the effective advocacy of counsel.

### 3.   Zamora Was Denied The Effective Assistance of Counsel During The Trial Phase

In the context of a claim of ineffective assistance of counsel, during the trial phase, it is understood that "*Strickland* does not guarantee perfect representation, only a reasonably competent attorney".  See: *Harrington v. Richter*, *562 U.S. 86, 110 (2011)*.  Indeed, the "court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional norms" (See: *Feist v. Scott*, *885 F. Supp, 927, 929 (E.D. Tex. 1995)* (*quoting Strickland at 689)*) while considering "the facts and circumstances" of the particular case. See: *Graham v. Connor*, *490 U.S. 386, 396 (1989)*.  The facts and circumstances of Zamora's case confirm that Colston's trial phase errors satisfy *Strickland's* high bar.

It is well settled that counsel has an obligation to conduct a "reasonably substantial independent investigation". See: *Baldwin v. Maggio*, *704 F. 2d 1325, 1332-33 (5th Cir. 1983)*.  As explained by the Fifth Circuit in *Beto* "our adversary system is designed to serve the ends of justice; it cannot do that unless accused's counsel presents an intelligent and knowledgeable defense.  Such a defends requires investigation and preparation." See: *Caraway v. Beto*, *421 F. 2d 636, 637-638 (5th*

*Cir. 1970)*. Put simply, despite telling Zamora he had a "good chance" at trial - the record confirms that Colston took no steps to conduct an investigation in this case Had Colston taken the time to conduct a reasonable investigation he, first and foremost would have never encouraged his client to go to trial, but also would have been prepared to file a suppression motion that included the information and documentation necessary for the Court to properly consider the filing. As discussed *supra*. Colston's filing was so lacking, and perfunctory, that he did not even include evidence to establish that the officer Zamora invoked his right to counsel in front of was present at the time of invocation. This profound failure, as the Court noted, prevented it from determining whether the affidavit lacked probable cause. Thereby denying Zamora meaningful consideration of his suppression motions. Further, Zamora went to trial without ever having a conversation with Colston as to what his defense would be - all that he knew was that he had a "good chance of winning". See: *Zamora Declaration Exhibit "A"*. Perhaps, Colston did not have a Constitutional duty to discuss every single element of his planned defense with his client. But, certainly he had an obligation to discuss at least a basic overview of the strategy – so that Zamora could actively assist him in the preparation of a defense[17]. After all, Zamora should be more familiar with the facts of the case than Colston.

---

[17] Or independently decide that he did not have a viable defense.

Because Zamora was denied the effective assistance of counsel he is entitled to receive during the trial phase of his criminal proceeding, the interests of justice demand that the judgment be set aside, and further proceedings held[18].

## D.    An Evidentiary Hearing is Warranted

In determining whether to hold on evidentiary hearing in a post-conviction filing 28 U.S.C. §2255(b) is controlling, it provides in pertinent part that:

> "Unless the motion and the files and the record of the case conclusively shows that the petitioner is entitled to no relief, the court shall cause notice thereof to be served upon the United States Attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." See: *Andrews v. United States*, 286 F. 2d 829 (5th Cir. 1961) (citing 28 U.S.C. §2255(b)).

A sister circuit, in interpreting §2255(b), held that a petition must meet only a relatively light burden before an evidentiary hearing is warranted. See e.g.: *Raines v. United States*, 425 F. 2d 526, 529 (6th Cir. 1970). The burden is met when "sufficient facts which, if proven, would justify relief". See: *United States v. Harrelson*, 705 F. 2d 733, 737 (5th Cir. 1983). That said, an objective review and liberal interpretation of the claims of error asserted herein confirms that they are specific in nature, supported at least in part by the established record, and if true – Zamora is entitled to relief. Even if the Court is not persuaded by Zamora's trial phase claims of ineffective assistance of counsel, the record at a minimum establishes

---

[18] In his §2255 Motion, Zamora asserted that Colston was ineffective during the sentencing phase. While Zamora still believes that to be the case, he is unable to definitively establish that Colston's failures were prejudicial. That said, the one area at sentencing where perhaps prejudice was suffered was when Colston failed to specifically move for a variance/departure based upon Zamora's minor role in the offense. However, Colston did request a below-guidelines sentence based upon Zamora's limited role. Thus, it would seem that the argument was presented – even if not followed by a specific variance/departure request.

that an evidentiary hearing is warranted on the pre-trial related claims. Specifically, what conversations Colston had (or did not have) with Zamora and/or his wife leading up to the decision being made to proceed to trial.

## IV.    CONCLUSION

There is no dispute that Zamora is not a sympathetic defendant; but the Constitution does not create a carve out for unsympathetic defendants. Rather, one of the great promises of America is that all criminal defendants be treated fairly, equally and with the dignity the Constitution commands. The record confirms that Zamora was denied the benefit of this great promise; as a consequence, Zamora's conviction and/or sentence must be set aside, and further proceedings held.

**WHEREFORE,** for the reasons states herein and as supported by the record, Zamora prays that this Honorable Court *GRANT* his §2255 Motion and thereafter grant him any and all other relief that the Court deems to be just and equitable.

*Respectfully Submitted,*

Juan Manuel Contreras-Zamora
Reg #: 93925-011
USP Atwater
P.O. Box 019001
Atwater, California 95301

## CERTIFICATE OF SERVICE

I, the undersigned, do hereby certify that on this 20 day of November 2023

did forward a true and correct copy of the foregoing Memorandum – via the United

States Postal Service, using postage pre-paid means, to the person(s) listed below:

Shawn Smith, Esq.
Assistant United States Attorney
Northern District of Texas
801 Cherry Street, Suite 1700
Forth Worth, Texas 76102

**ORIGINAL TO:**
United States District Court Clerk
Northern District of Texas
501 West 10th Street, Room 310
Forth Worth, Texas 76102

**WITNESS MY HAND THIS 20 DAY OF NOVEMBER, 2023.**

_____
Witness

Juan Manuel Contreras-Zamora

# ZAMORA DECLARATION

# EXHIBIT "A"

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF TEXAS

UNITED STATES OF AMERICA,)
    Plaintiff/Respondent,    )
    )
    )
v.    )   **Case No: <u>4:20-cr-339</u>**
    )       **<u>4:23-cv-01016</u>**
**JUAN MANUEL CONTRERAS-**   )   **Hon. Terry R. Means**
**ZAMORA,**    )
    **Defendant/Movant.**    )
    )

## <u>DECLARATION OF JUAN MANUEL CONTRERAS-ZAMORA</u>
\* \* \* \* \* \* \* \*

I, Juan Manuel Contreras-Zamora, do hereby swear, affirm, and declare under penalty of perjury that the following statements are to the best of my reasonable information and belief true, correct, and accurate:

1)     My full name is Juan Manuel Contreras-Zamora;

2)     I am an adult male who has previously reached the age of majority;

3)     I am the defendant in the case styled <u>*United States v. Juan Manuel Contreras- Zamora*</u> and bearing a case number of 4:20-cr-339 filed in the United States District Court for the Northern District of Texas ("Criminal Case");

4)     In my Criminal Case, I was represented by attorney Sean D. Colston ("Colston"). Colston would represent me during the plea, trial, and sentencing phases of the proceeding;

5)    I recall that Colston came to the jail to discuss a plea offer that the United States had extended.  Colston explained to me that the plea offer was an open plea and required me to plead guilty to the conspiracy count contained in the indictment in my criminal case;

6)    When Colston went over the plea agreement with me, I told him that I was concerned that the document did not contain a case number.  To my address my concern Colston said "that's the way the Fed's do things".  Other then this statement, Colston never explained or discussed any of the other terms or conditions of the plea agreement;

7)    I recall Colston telling me that if I went to trial in my Criminal Case that I had a "good chance of winning" and that if convicted I would receive at most "ten to fifteen years".  I relied upon this information when I made the decision to go to trial in my Criminal Proceeding;

8)    Colston never discussed with me the possibility of pleading guilty without the benefit of a plea agreement and/or the pros and cons of doing so;

9)    Had Colston taken the time to explain to me the terms of the extended plea agreement, the ability to plead guilty without the benefit of a written plea agreement, and/or an accurate estimation of the sentence exposure I faced by going to trial – I would not have proceeded to trial in my criminal case;

10)    Colston took no steps to investigate the information I provided him;

11)    At no point prior to trial did Colston explain to me the specific elements of the offenses charged against me in my Criminal Case; nor did he

explain to me what the United States would have to prove in order for a jury to find me guilty – or the weight of the evidence against me, especially after the denial of the suppression motions;

12)    Colston never explained to me what his defense strategy would be at trial;

13)    Had Colston explained to me the benefits of pleading guilty, alongside the weight of the evidence against me, it is more likely than not that I would pleaded guilty rather than go to trial in my Criminal Case; and

14)    I offer this declaration in good faith.

**WITNESS MY HAND THIS 20 DAY OF NOVEMBER, 2023**

_____
Witness

Juan Manuel Contreras-Zamora

# SAHAHI ZAMORA DECLARATION

# EXHIBIT "B"

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS

UNITED STATES OF AMERICA,)
      Plaintiff/Respondent,    )
                            )

v.                          )    Case No: <u>4:20-cr-339</u>
                            )           <u>4:23-cv-01016</u>

JUAN MANUEL CONTRERAS-  )   Hon. Terry R. Means
ZAMORA,                    )
      Defendant/Movant.      )
_____ )

## <u>DECLARATION OF SARAHI ZAMORA</u>
### * * * * * * * *

I, Sarahi Zamora, do hereby swear, affirm, and declare under penalty of perjury that the following statements are to the best of my reasonable information and belief true, correct, and accurate:

1)     My full name is Sarahi Zamora;

2)     I am an adult female who has previously reached the age of majority;

3)     My husband is Juan Manuel Contreras-Zamora ("Zamora");

4)     I am aware that attorney Sean D. Colston ("Colston") represented Zamora in his criminal prosecution in federal court in Texas;

5)     I am aware that Zamora was charged with various drug offenses and a gun offense in the case referenced in ¶4; though I have no specific knowledge as to the facts or circumstances that gave rise to offense(s);

6)      I spoke with Colston on several occasions.  I specifically recall speaking to Colston on April 15, 2021, in the early morning, and him telling me that if Zamora was convicted at trial he would receive a sentence of "around ten-years";

7)      I told Zamora about the conversation I had with Colston and his advisement about likely sentence length.  I know that the advisement played a role in Zamora's decision to go to trial; and

8)      I offer this declaration in good faith.

Nov 20, 2023

**WITNESS MY HAND THIS ___ DAY OF NOVEMBER, 2023**

*Sarahi zamora puentes*
Sarahi zamora puentes (Nov 20, 2023 15:53 CST)

_____            Sarahi Zamora
Witness



Extremely Urgent

xpress®
xpedited®

JUAN CONTRERAS-ZAMORA REG: 939
5555555555
USP ATWATER
PO BOX 019001
ATWATER CA 95301

0.1 LBS LTR          1 OF 1

SHIP TO:
UNITED STATES DISTRICT COURT CLERK
NORTHERN DISTRICT OF TEXAS - FORT W
501 W 10TH ST STE 310
**FORT WORTH TX 76102-3641**

RECEIVED
NOV 27 2?
11:57 AM

TX 761 9-05

**UPS 2ND DAY AIR**          2
TRACKING #: 1Z 84R V87 02 3552 9422

BILLING: 3RD PARTY

XOL 23.11.05    NV-IS 47.0A 11/2023*

Scan QR code to schedule a picku

**Domestic Shipment:**
• To qualify for the lett correspondence, urge 8 oz. or less. UPS Expr or weighing more tha

**International Shipm**
• The UPS Express env value. Certa n countr ups.com/importexpo

• To qualify for the lett UPS express envelop

**Note:** UPS Express en electronic media cont Do not send cash or ca

Serving you for more than 110 years
United Parcel Service.®

For Information about UPS's privacy practices or to opt out from the sale of personal Information, please see the UPS Privacy Notice at www.ups.com

010195101  05/21  TG  United Parcel Service

International Shipping Notice — Carriage hereunder may be subject to the rules relating to liability and other terms and/or conditions established by the Convention for the Unification of Certain Rules Relating to International Carriage by Air (the "Warsaw Convention") and/or the Convention on the Contract for the International Carriage of Goods by Road (the "CMR Convention"). These commodities, technology or software were exported from the U.S. In accordance with the Export Administration Regulations. Diversion contrary to U.S. law prohibited.

80% Post-Consumer Content

# Express

Extremely Urgent

