IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

JUAN MANUEL CONTRERAS-ZAMORA   §
                                §
VS.                             §     ACTION NO. 4:23-CV-1016-Y
                                §   (Crim. No. 4:20-CR-339-Y (25))
UNITED STATES OF AMERICA        §

<u>ORDER DENYING MOTION TO VACATE SENTENCE</u>

Pending before the Court is defendant Juan Manuel Contreras-Zamora's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (doc. 1) and the separate memorandum subsequently filed in support of the motion (doc. 8).   After review of these documents, the government's response, and the record in Zamora's criminal case, the Court concludes that the motion should be denied.

## I.  Background

On March 17, 2021, Zamora was found guilty by a jury of conspiracy to possess with intent to distribute 50 grams or more of methamphetamine and attempting to possess with intent to distribute 500 grams or more of methamphetamine, both in violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(A).  He was also found guilty of possession of a firearm in relation to a drug-trafficking crime, in violation of 18 U.S.C. 924(c)(1)(A).  On August 12, this Court entered a judgment sentencing Zamora to a total of 384 months' imprisonment. He timely appealed, but the United States Court of Appeals for the Fifth Circuit affirmed this Court's judgment on June 8, 2022. Zamora then petitioned for a writ of certiorari from

the United States Supreme Court, but that request was denied on October 5. On October 3, 2023, Zamora timely filed his pending motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255, which is now ripe for this Court's review.

## II.  Grounds for Relief

In his motion, Zamora contends that his counsel was ineffective during the pretrial and trial phases of his case.[1] Specifically, Zamora's motion contends that counsel was ineffective during pretrial proceedings by (1) "fail[ing] to discuss the consequences of going to trial--including potential sentencing exposure and the weight of the United States' evidence;" (2) "fail[ing] to explain the advantages/disadvantages of an open plea;" and (3) "fail[ing] to explain what the United States was require[d] to prove in order to show that the search of the vehicle was lawful."  (Mot. to Vacate (doc. 1) 5.)  He also contends that counsel was ineffective during trial by (1) "fail[ing] to investigate and thereafter present a meaningful defense;" (2) "fail[ing] to challenge the constitutionality of the search of the vehicle;" and (3) "fail[ing] to discuss defense strategies with [him]."  (*Id.* at 6.)  The government filed a timely response to Zamora's motion, and the matter is now ripe for consideration.

---

[1]Zamora's motion also contends that counsel was ineffective during the sentencing phase, but he admits in the memorandum in support of his motion that he is unable to establish prejudice as to his claims regarding sentencing.  (Mem. in Supp. of Mot. to Vacate (doc. 8) 18, n. 18.) Thus, the Court has not addressed them.

### III.  Applicable Law

A.   Standard of Review

Under 28 U.S.C. § 2255, a prisoner may move the convicting court to vacate, set aside, or correct his conviction or sentence on four grounds: "(1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose the sentence; (3) the sentence exceeds the statutory maximum sentence; or (4) the sentence is otherwise subject to collateral attack." 28 U.S.C. § 2255(a) (West 2019); *see United States v. Placente*, 81 F.3d 555, 558 (5th Cir. 1996).  "It has, of course, long been settled law that an error that may justify reversal on direct appeal will not necessarily support a collateral attack on a final judgment." *United States v. Addonizio*, 442 U.S. 178, 184 (1979). "Section 2255 does not offer recourse to all who suffer trial errors." *United States v. Capua*, 656 F.2d 1033, 1037 (5th Cir. Unit A Sept. 1981). It may also "not do service for an appeal." *United States v. Frady*, 456 U.S. 152, 165 (1982). After conviction and the exhaustion or waiver of all appeals, the Court is "entitled to presume" that the prisoner "stands fairly and finally convicted." *Id.* at 164.

B. Ineffective-Assistance Claims under § 2255

Ineffective-assistance-of-counsel claims can be raised under section 2255. *See Massaro v. United States*, 538 U.S. 500, 504 (2003). To establish that counsel was ineffective, a defendant must

demonstrate two things:  "first, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

To show deficient conduct under *Strickland*, the burden is on the defendant to show that his counsel's representation fell below an objective standard of reasonableness by identifying acts or omissions of counsel "that are alleged not to have been the result of reasonable professional judgment." *Strickland*, 466 U.S. at 690. A district court then determines whether, "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Id.*  There is a strong presumption that the performance of counsel falls within this range. *United States v. Samuels*, 59 F.3d 526, 529 (5th Cir. 1995).    A defendant cannot overcome this presumption with conclusory allegations that lack supporting evidence. *See United States v. Pineda*, 988 F.2d 22, 23 (5th Cir. 1993) ("mere conclusory allegations on a critical issue are insufficient to raise a constitutional issue") (quotation omitted).

To prove prejudice generally, a defendant must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*,   466   U.S.   at   694.   This   showing   "requires   a

'substantial,' not just 'conceivable,' likelihood of a different result." *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011). "Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). Failure to meet either the deficient-performance or prejudice prongs will defeat a claim of ineffective assistance. *United States v. Stewart*, 207 F.3d 750, 751 (5th Cir. 2000). The reviewing court need not address both components if there is an insufficient showing on one. *Id.*

### IV.  Analysis

A.  Pretrial Proceedings

Zamora contends in his motion that, prior to trial, his counsel failed to discuss with him the consequences of going to trial and his potential sentencing exposure, the advantages of an "open plea agreement," or the government's burden of proof regarding the legality of the search of his vehicle.[2]  After review

---

[2]In his memorandum in support of his motion, Zamora changes his contentions, stating instead that his counsel failed "to [e]xplain [t]he [e]lements of [t]he [c]harged [o]ffense and [t]he [e]ffects of the [s]uppression [m]otion on [t]rial [s]trategy."  (Mem. in Support of Mot. to Vacate (doc. 8) at 11.) In support of this new contention, he claims that his counsel failed to explain "that the United States was not required to prove he physically participated in the distribution of the narcotics charged in the [i]ndictment--but could rather connect him to the distribution through witness testimony;" that he failed to explain that "because of the conspiracy count, should he be found guilty at trial, the total weight of the drugs distributed by the conspiracy could be attributed to him at sentencing--thereby greatly increasing his sentencing exposure;" and that he "failed to explain what evidence the United States could use against [him] at trial."  (*Id.* at 11-12.) Zamora's memorandum in support of his motion was not filed, however, until November 27, 2023, well after the one-year statute of limitations contained in 28 U.S.C. § 2255(f)(1) expired. In granting Zamora's motion for an extension of time to file a memorandum in support of his motion, the Court warned that the memorandum could be filed "in support of **only** the grounds and claims already listed in his [timely-filed] § 2255 motion."  (Order Gr. Mot. for Extension of Time to File Brief (doc. 7) at 1.)  The new contentions raised in Zamora's memorandum do not relate back to the claims made in his original, timely motion. Consequently, the new contentions raised for the first time in Zamora's memorandum are time-barred, and the Court will not address them.  *See*

of the record, however, the Court finds his claims suspect.

As noted by the government, Zamora has a lengthy criminal history that includes fourteen prior criminal convictions, including four prior federal convictions. (Crim. PSR (doc. 839) at 17-18, ¶¶ 60-61; 19-20, ¶¶ 64-65.) Thus, he was not new to the federal justice system. And the record in his criminal case reflects that he was offered two plea deals by the government but rejected both of them. (Crim. Tr. (doc. 1129) 3-4.) The record also reflects that the Court warned him in open court at his pretrial conference that his decision to reject the plea offer would cause him to "forego the possibility of a reduction of three levels in [his] total offense level . . . such that [he] would be facing a longer--probably a longer term of incarceration were [he] to be convicted." (*Id.* at 4.) Nevertheless, Zamora persisted in refusing the government's plea offers, apparently out of concern for the welfare of his family if he pled guilty. (Crim. Tr. (doc. 1061-4) at 37.)

He now contends, however, that his attorney promised him--a promise allegedly also relayed to his wife--that "if convicted his sentencing exposure would be somewhere between ten and fifteen years; [and] that he had a 'good chance' at trial." (Mem. in Supp. of Mot. to Vacate (doc 8) at 13.) It strains credulity that any

---

*United States v. Gonzalez,* 592 F.3d 675, 679-80 (5th Cir. 2009) (holding that "[n]ew claims of ineffective assistance of counsel do not automatically relate back to prior ineffective assistance claims simply because they violate the same constitutional provision. Rather, we must look to whether [the] new claim asserts 'a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth.'") (quoting *Mayle v. Felix*, 545 U.S. 644, 650 (2005)).

attorney would tell someone with Zamora's extensive criminal history who was caught driving a vehicle containing a glass pipe with methamphetamine residue, a loaded handgun, currency in the amount of $14,900, and debit cards belonging to other people that he had a good chance of success at trial. Furthermore, despite having been permitted an opportunity to speak to the Court before the pronouncement of his sentence and to ask questions of the Court after the pronouncement of his 384-month sentence, Zamora wholly failed to mention counsel's alleged promise of a ten-to-fifteen-year sentence. And that alleged promise apparently also was not mentioned during Zamora's appeal or in his petition for writ of certiorari to the Supreme Court.

In any event, to succeed on such a claim, a § 2255 petitioner must prove "(1) the exact terms of the alleged promise, (2) exactly when, where, and by whom the promise was made, and (3) the precise identity of an eyewitness to the promise." *U.S. v. Cervantes*, 132 F.3d 1106, 1110 (5th Cir. 1998); *see also Davis v. Butler*, 825 F.2d 892, 894 (5th Cir. 1987) (noting that habeas relief is available to a petitioner making this three-pronged offer of proof only "'[i]n situations where an *actual promise* has been made to a petitioner, rather than there being merely an "understanding" on his part'") (quoting *Smith v. McCotter*, 786 F.2d 697, 701 (5th Cir. 1986)). "If the defendant produces independent indicia of the likely merit of [his] allegations, typically in the form of one or more affidavits from reliable third parties, [he] is entitled to an evidentiary hearing on the issue." *Id.* But "a petitioner is not entitled to

an evidentiary hearing when his allegations of an unkept promise are inconsistent with the bulk of his conduct, and when he offers no detailed and specific facts surrounding the agreement." *Davis*, 825 F.2d at 894.

In support of his contention, Zamora submits his declaration and the declaration of Sarahi Zamora. Sarahi contends that she is Zamora's wife, although, as pointed out by the government, Zamora's PSR does not mention Sarahi and instead reflects that he was in a twelve-year relationship with a "Damaris Elizabeth Puentes Rodriguez" at the time of his arrest. (Crim. PSR (doc. 831) at 23, ¶¶ 81, 83.) Zamora's declaration states, in conclusory fashion, as follows: "I recall [my attorney] telling me that if I went to trial in my Criminal Case that I had a 'good chance of winning' and that if convicted I would receive at most 'ten to fifteen years.'" (Mem. in Supp. of Mot. to Vacate (doc. 8) 23, Ex. A ¶ 7.) No specific details are provided regarding exactly when and where this promise was made, nor is there any suggestion that anyone else overheard the alleged promise. Sarahi's declaration fares no better, alleging simply that "I specifically recall speaking to [Zamora's attorney] on April 15, 2021, in the early morning, and him telling me that if Zamora was convicted at trial he would receive a sentence of 'around ten years.'" (*Id.* at 27, Ex. B ¶ 6.) In addition to being conclusory, Sarahi's statement is either inaccurate as to the date or irrelevant, given that April 15, 2021, the date she claims to have spoken to the attorney, was almost a month after Zamora was found guilty at trial. In either event,

ORDER DENYING MOTION TO VACATE SENTENCE - Page 8
TRM/chr

both declarations are insufficiently specific and detailed to warrant an evidentiary hearing on the issue and are contrary to Zamora's conduct at sentencing and on appeal, where he wholly failed to mention his counsel's alleged promise.

As for his remaining complaints about counsel's alleged pre-trial failures, the Court concludes that Zamora has failed to demonstrate prejudice. Zamora has failed to demonstrate how his counsel's failure to tell him about a so-called "open plea agreement" or the government's burden of proof regarding the search of his vehicle prejudiced him in any way. Zamora now contends that had counsel adequately explained "the availability of pleading guilty 'straight up'," he might have "avoid[ed] trial and receive[d] a more favorable sentence because of an acceptance of responsibility." (Mem. in Supp. of Motion to Vacate (doc. 8) 13-14.) But the Court warned him at the pretrial conference that he was in jeopardy of losing his acceptance-of-responsibility deductions by not pleading guilty, and Zamora nevertheless persisted in his refusal to accept the government's plea offer. Thus, Zamora has failed to demonstrate that but for his counsel's alleged pretrial errors, the result of his criminal proceeding would have been different.

B. Trial

Zamora contends that counsel was also ineffective at trial by failing to investigate and present a meaningful defense. He fails, however, to delineate what additional investigation should have been undertaken by counsel, what evidence would have been found had

ORDER DENYING MOTION TO VACATE SENTENCE - Page 9
TRM/chr

that investigation occurred, or how it would have led to an acquittal or lower sentence. *See United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989) ("A defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial.") Consequently, he has failed to demonstrate that counsel was ineffective on this basis.

And his contention that counsel failed to challenge the constitutionality of the search of his vehicle is belied by the record. Counsel filed a suppression motion on that very basis, but it was denied by the Court without a hearing. (Crim. Mot. to Suppress (doc. 412); Order Denying Mot. to Suppress (doc. 490).) "Neither the failure of this argument to persuade the district court nor the absence of any further objection to the court's decision suggests that the attorney's conduct was constitutionally deficient. Even 'an unsuccessful defense' must enjoy 'a strong presumption' of reasonableness." *United States v. Massey*, 79 F.4th 396, 399 (5th Cir. 2023).

Finally, Zamora contends that his counsel was deficient for failing to discuss "defense strategies" with him. Zamora's contention is conclusory, however, given that he wholly fails to delineate the particular strategies on which he was not consulted. And a defense counsel's "strategic choices . . . are 'virtually unchallengeable'" by way of an ineffective-assistance-of-counsel claim. *Anaya v. Lumpkin*, 976 F.3d 545, 552 (5th Cir. 2020) (quoting *Strickland*, 466 U.S. at 690). Nor has Zamora shown that

ORDER DENYING MOTION TO VACATE SENTENCE - Page 10
TRM/chr

the failure to discuss these unnamed strategies prejudiced his defense, inasmuch as he has failed to demonstrate that the result would have been any different had the strategies been discussed with him.

## IV.  Conclusion

For the foregoing reasons, the Court concludes that Zamora's § 2255 motion should be, and it is hereby, DENIED.  Additionally, for similar reasons, the Court concludes that reasonable jurists could not question this Court's resolution of Zamora's constitutional claim.  As a result, a certificate of appealability will not issue. *See* 28 U.S.C. § 2253(c)(1)(B); FED. R. APP. P. 22(b)(1).

SIGNED May 2, 2024.

TERRY R. MEANS
UNITED STATES DISTRICT JUDGE

ORDER DENYING MOTION TO VACATE SENTENCE - Page 11
TRM/chr